869 F.2d 1490
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert HAGGART, Petitioner-Appellant,
v.
Gene BORGERT, Respondent-Appellee.
 No. 88-1348.
 United States Court of Appeals, Sixth Circuit.
 March 17, 1989.
 
 Before MERRITT and DAVID A. NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The petitioner in this habeas corpus case alleges that his conviction in a Michigan court on six counts of first-degree murder, one count of second-degree murder, one count of assault with intent to murder, and eight counts of felony firearm offenses violated his constitutional rights of due process, equal protection, and confrontation. Like the district court, we find no constitutional infirmity in the proceedings that led to the petitioner's conviction; we shall therefore affirm the denial of the writ.
 
 
 2
 On February 16, 1982, seven people were killed on a small farm in Farwell, Michigan. The victims were the petitioner's estranged wife, her parents, her sister, and three of her sister's four children. A 14-month-old child survived the slaughter. Two days later the petitioner was arrested and charged in connection with the slayings.
 
 
 3
 Prior to trial the petitioner moved for a change of venue because of the publicity the case had received. With the petitioner's agreement, venue was changed to a county adjoining that in which the murders occurred.
 
 
 4
 Voir dire of the prospective jurors was lengthy and meticulous; it took four days to complete and resulted in the production of a 782-page transcript. Each prospective juror who had knowledge of the case was questioned outside the hearing of the rest of the venire. Prospective jurors who had recently been exposed to publicity on the slayings were automatically excused. At the end of voir dire the petitioner expressed his satisfaction with the jury that had been selected; he still had four peremptory challenges left, but chose not to use them.
 
 
 5
 Three witnesses testified at trial that they had seen the petitioner at the scene at about the time the murders occurred. The petitioner was arrested driving a car stolen from the place where the crimes occurred. Under the front seat was one of the two guns used in the slayings. There was testimony indicating that the petitioner had stolen the gun shortly before the crime. Blood-stained clothing was discovered in the petitioner's apartment.
 
 
 6
 The petitioner argues that he was presumptively denied an impartial jury as a result of the extensive pretrial publicity. But a trial court's finding that the jury is impartial may be overturned only if it is manifestly erroneous. Patton v. Yount, 467 U.S. 1025, 1031-32 (1984). And only if pretrial publicity is widespread and of an extremely prejudicial nature will a juror's assurance of impartiality be presumed unreliable. Id. at 1032-33.
 
 
 7
 In United States v. Ebens, 800 F.2d 1422 (6th Cir.1986), this court considered whether pervasive publicity had precluded the seating of an impartial jury. Although the publicity in that case appears to have been more extensive than the publicity here, the Ebens trial having been preceded by public rallies, special news stories, and "scathing" newspaper headlines, a panel of this court was "unable to hold that the trial judge committed error when she determined to proceed to impanel a jury." Id. at 1426.
 
 
 8
 The mere exposure to pretrial publicity does not vitiate a venireman's testimony that he "can lay aside his impression or opinion and render a verdict based on the evidence presented in court." United States v. Blanton, 719 F.2d 815, 830-31 (6th Cir.1983) (en banc), cert. denied, 465 U.S. 1099 (1984). A failure to exercise all peremptory challenges, moreover, "is of great importance in determining whether the jury so selected was capable of meeting the demands of impartiality placed upon it by law." Ebens, 800 F.2d at 1427. That factor is obviously of importance here, as is the petitioner's consent to venue being laid in the county where the trial was conducted.
 
 
 9
 The publicity that preceded the petitioner's trial was quite extensive, but the record does not reveal a "barrage of inflammatory publicity immediately prior to trial" amounting to a "huge ... wave of public passion." See Patton, 467 U.S. at 1033. We shall not presume that the jury was anything other than impartial, and in the absence of such a presumption the claim of partiality cannot be sustained. And for the reasons stated in the opinion of the district court, we are not persuaded that the failure to sequester the jury, without a request to do so, constituted a denial of due process.
 
 
 10
 The petitioner also claims that he was denied his constitutional right to confront witnesses against him when a forensic serologist testified that another individual had tested dried blood on clothing found in the petitioner's apartment and determined that it was not the petitioner's own blood. The district court determined that the petitioner's Sixth Amendment right had been violated, but that the error was harmless.
 
 
 11
 Violations of the confrontation clause are unquestionably subject to harmless error analysis, Delaware v. Van Argdall, 475 U.S. 673, 684 (1986), and in the present case the independent evidence of guilt was overwhelming. The testimony that was erroneously admitted did not positively identify the blood as belonging to any of the victims, and the challenged evidence was but a small part of the prosecution's case. We agree with the district court that the error was harmless.
 
 
 12
 The petitioner also argues that the blood-typing evidence ought to have been excluded because serological electrophoresis had not been shown to be generally accepted as reliable. A trial court's evidentiary rulings are not open to challenge on collateral review, however, absent a showing that they made the trial fundamentally unfair. Brofford v. Marshall, 751 F.2d 845, 857 (6th Cir.), cert. denied, 474 U.S. 872 (1985). There was no such showing here.
 
 
 13
 The petitioner's final argument is that the Michigan Supreme Court violated his constitutional rights by refusing to entertain an appeal. In People v. Young, 425 Mich. 470, 499, 391 N.W.2d 270, 283 (1986), that court decided that the scientific community had not generally agreed on the reliability of electrophoretic testing. It subsequently refused to accept an appeal in which the petitioner sought to challenge the admission of evidence on electrophoretic testing. Review by the Michigan Supreme Court was discretionary, however, and the court was certainly under no obligation to accept an appeal in which a decision in favor of the petitioner on the evidentiary question would not necessarily have resulted in reversal of the convictions.
 
 
 14
 For the foregoing reasons, and for the reasons set forth in Judge Cohn's more extensive memorandum of March 16, 1988, the judgment of the district court is AFFIRMED.